RECEIVED BY MAIL OCT 30 2014 CLERK, U.S. DISTRICT COURT ST. PAUL, MN

Filed in Fourth Judicial District Court
12/31/2012 5:36:48 PM
Hennepin County Civil, MN

RECEIVED BY MAIL OCT 28 2014 CLERK, U.S. DISTRICT COURT ST. PAUL, MN

# AFFIDAVIT OF EXPERT REVIEW AND IDENTIFICATION OF EXPERT-JOHN D. ANGSTADT, M.D., F.A.C.S.

STATE OF NEW YORK       )
                        )SS.
COUNTY OF SUFFOLK       )

Affiant, Dr. John D. Angstadt being first duly sworn and on oath, states and declares as follows:

1. My name is John Angstadt. I am a physician board certified in surgery, and presently the medical director at St. Charles Bariatric Program with New York Bariatric Group, 3003 New Hyde Park Road, Suite 307, New York Park, NY 11042.

2. Attached and incorporated herein by reference is my education and experience summarized in my curriculum vitae.

3. I have reviewed the medical records of Tanya Langama from the Fairview University, University of Minnesota, North Memorial Hospital Robbinsdale Minnesota, and Mayo Clinic, Rochester Minnesota.

4. In my current and past practice I have had extensive experience with Bariatric Surgery and the assessment and care of patients at a Bariatric Clinic. The opinions I am rendering are held to a reasonable degree of medical certainty and are based upon my research, knowledge, experience, training and careful review of Ms. Tanya Langama medical records.

5. My opinions are based upon the application of well-known and generally accepted principles of science and medicine involving bariatric surgery, complications of bariatric surgery, and the diagnosis and treatment of patients with a history and clinical presentation similar to Ms. Tanya Langama between 2001 and 2011.

6. Ms. Tanya Langama was 28 years old and had morbid obesity at the time she presented herself to the care of Dr. Henry Buchwald at the Fairview University Medical Center, University of Minnesota Hospital.

1

Filed in Fourth Judicial District Court
12/31/2012 5:36:48 PM
Hennepin County Civil, MN

7. In preparation for my report I have reviewed the following records:

   a. Personal statement by Tanya Langama

   b. Operative note and discharge summary for hospitalization at Fairview-University Medical Center in November 2001

   c. Admission note and discharge summary for hospitalization at Fairview-University Medical Center in January 2002

   d. Medical records for hospitalization at North Memorial Robbinsdale Hospital in March 2008

   e. Discharge summary and operative reports for hospitalization at Fairview- University Medical Center in March 2008

   f. Discharge summary and outpatient note for hospitalization at Fairview-University Medical Center in May 2008

   g. Outpatient records from various providers, including the Mayo Clinic from 2009-2011.

   h. Operative report for surgery performed at Mayo Clinic in May 2011 and follow-up Office notes.

8. Tanya Langama was treated for morbid obesity by Dr. Henry Buchwald in November 2011. She underwent an open, retrocolic Roux-en-Y gastric bypass. At the time of surgery, the mesocolic and jejunojunostomy mesenteric defects were completely closed.

9. Ms. Tanya Lingam developed abdominal pain after her surgery in November 2011 and presented to the Emergency Room at Fairview-University Medical Center. She had undergone a CT scan a week earlier which was read as normal. She was watched and discharged when her symptoms improved.

10. On March 6, 2008, she presented to the Emergency Room at North Memorial Robbinsdale Hospital complaining of the acute onset of diffuse abdominal pain radiating to her back. Pain began the morning of her presentation and was associated with nausea and vomiting. She had had a bowel movement the evening before. On examination, her vital signs were stable. Her abdomen was soft and non-distended. She had diffuse tenderness throughout abdomen with no peritoneal signs. Her lab studies showed a WBC of 6,600, hemoglobin low at 8.8 with hemocrit of 30.9. Her lactate was 1.5 and her troponin was negative. Electrolytes showed low potassium at 3.4. She underwent a CT scan which showed occlusion of superior mesenteric vein near its junction with the splenic vein. Due to presence of collateral vessels this was felt to be chronic. There was a swirled appearance of the mesentery at two locations. The first was located along the axis of the superior mesenteric arteries and the second swirling was located in the left upper

quadrant. Radiologist notes in his report that gastric bypass patients can develop internal hernias in the postoperative state.

11.  Mrs. Langama is seen by Dr. Noznesky, a general surgeon, the afternoon of her admission to the hospital. He confirms the findings on exam noted on her admission and reviews her CT scan. He feels that her presentation and initial CT scan may be consistent with an internal hernia but there is no acute process. Since the scan was not done without oral contrast, the scan is repeated. Repeat CT scan shows swirling of mesentery but it is interpreted as normal gastric bypass anatomy.

12.  Mrs. Langama is admitted and observed. She continues to have pain and nausea and is treated with IV fluid and narcotics for the pain. In the morning of March 7, 2008, she is evaluated again by Dr. Noznesky. He notes she is afebrile with some pain. On examination, her abdomen is soft and slightly tender. Her WBC is normal at 7,800 and her lactate is down to 0.8. He continues to observe her.

13.  On March 8, 2008 she undergoes an upper GI endoscopy which shows normal gastric bypass anatomy and minimal gastritis normal. At 9:30 in the morning she is evaluated by Dr. Gregory Vitas, a general surgeon, who notes a low grade temperature overnight, a moderately distended abdomen with moderate diffuse tenderness but no peritoneal signs. Her WBC has increased to 16,100. He orders a repeat CT scan. Mrs. Langama vomits the contrast and is given more. At 10:45 am she has a bloody stool. CT scan is completed at 3 pm showing edema at the mesenteric swirling and small bowel obstruction. Transfusion is ordered in preparation for surgery.

14.  Mrs. Langama is taken to the operating room that evening and found to have massive proximal gut ischemia/necrosis secondary to volvulus with probable internal hernia, near total ischemia of retrocolic Roux limb. Dr. Vitas resects the necrotic small bowel, staples across the Roux limb, brings jejunum out as an ostomy and brings ileum leading to ileocecal valve up as an ostomy. Mrs. Langama stabilizes over the next 4 days and is transferred to the care of Dr. Buchwald at Fairfield University Medical Center on March 12, 2008.

15.  Mrs. Langama has a slow, difficult recovery involving total parenteral nutrition (TPN) and

multiple interventions including placing a percutaneous gastrostomy tube and drainage of a gastric remnant fistula. She develops acute pancreatitis and is treated conservatively for that. She is unable to tolerate tube feeds and is sustained with TPN.

16. On May 9, 2008, Dr. Buchwald takes her to the operating room for a long procedure. After taking down her adhesions, he finds she has 190 cm of small bowel (ileostomy to ileo-cecal valve) and 10 of small bowel from ligament of Treitz to jejunostomy. Due to her short bowel he elects to restore intestinal continuity. Due to scarring in the area of her stomach remnant, he is unable to reconnect pouch to stomach remnant. He elects to connect remnant of Roux limb still attached to pouch to the stomach remnant to restore gastric continuity. Mrs. Langama recovers and goes home on a regular diet. Her course over the next several years up to 2011 is plagued by chronic diarrhea from her short bowel syndrome and intermittent vomiting with fairly persistent nausea.

17. Dr. Buchwald treated Mrs. Langama several times over the period from 2002-2008. His gastric bypass was done appropriately and he closed the mesenteric defects at the time of her initial surgery. His subsequent procedure did involve an unconventional reconstruction to restore gastric continuity. She is evaluated by the gastroenterology department at Mayo Clinic. They work with her to control her short bowel symptoms and her frequency of diarrhea decreases. Upper GI studies and nuclear tracer studies show contrast and tracer pass through stomach with normal GI motility.

18. She is evaluated by general surgery at Mayo Clinic and it is determined that her nausea and vomiting are related to the Roux limb used to restore intestinal continuity. After much consideration, she is taken to the operating room by Dr. Sar who finds she has 270 cm of small bowel distal to a dilated jejunojejunostomy. He resects the dilated bowel, removes the old Roux limb and restores her to typical gastric bypass anatomy. She recovers well from surgery and is discharged.

19. Gastric bypass patients are prone to develop internal hernias. They typically occur after significant weight loss when mesenteric spaces reopen. They require surgical treatment to resolve. To avoid massive intestinal necrosis, gastric bypass patients present with unexplained diffuse abdominal pain and CT findings suggestive of or consistent with internal hernia must be urgently explored in the operating room.

20. Dr. Noznesky faced this exact situation when he evaluated Mrs. Langama on March 6, 2008 and again on March 7, 2008. His failure to recommend urgent surgery led to her subsequent devastating

4

complication. His treatment did not meet the standard of care required by a general surgeon with his experience.

21. Dr. Vitas examined Ms. Langama on March 8th 2008. The clinical history and presentation warranted immediate, emergency surgery. Instead he elected to repeat her CT scan even in the face of a bloody stool which would suggest intestinal ischemia. If there was any chance to reverse her ischemia it would be with emergent, immediate surgical intervention. This delay resulted in the devastating complication he discovered when he operated on her.

22. It is my opinion that Mrs. Langama's medical problems with short bowel syndrome are the result of the failure of Dr. Noznesky and Dr. Vitas to operate on her in a timely fashion. Had she been taken to the operating room on March 7, 2008, the volvulus would have been corrected and she would have lost no bowel. Her short bowel syndrome, which will plague her for the rest of her life, is the result of this failure to act.

23. My opinions are based on the records I have reviewed and I reserve the right to modify my opinions if additional records become available. My opinions are delivered based on my experience and are accurate to a reasonable degree of medical certainty.

FURTHER AFFIANT SAYETH NAUGHT.   _____
John D. Angstadt, M.D., F.A.C.S.

This 12 day of day of November 2012
Signed and sworn to before me

_____
NOTARY PUBLIC

Danielle L. Danier

DANIELLE L. HEBERT
NOTARY PUBLIC, STATE OF NEW YORK
No. 01HE6087380
QUALIFIED IN SUFFOLK COUNTY
MY COMMISSION EXPIRES FEB. 10, 20__
6-10-15